**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CHRISTOPHER BURNS,                                    : CIVILACTION NO:
          PLAINTIFF,

V.                                                                          :

JAMES C. ROVELLA, COMMISSIONER,
DORA B. SCHRIRO, COMMISSIONER;
GEORGE F. BATTLE, COLONEL;
STAVROS J. MELLEKAS, COLONEL
MICHAEL B. DARCY, MAJOR;
JAY E. DELGROSSO, LIEUTENANT;
MATHIEU R. ASSELIN, SERGEANT;
ALAIN J. BISSON, SERGEANT,
AND DEPARTMENT OF EMERGENCY
 SERVICES AND PUBLIC PROTECTION,
          DEFENDANTS                          : APRIL 12, 2019

## COMPLAINT

### I.    NATURE OF ACTION

1.     This is an action for deprivation of civil rights pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution that secure for the Plaintiff to be free from retaliation for speech on a matter of public concern. Plaintiff was retaliated against for seeking redress in this court in an action seeking vindication of his constitutional rights. Defendants violated Plaintiff's rights to Fourteenth Amendment procedural due process and equal protection, violation of the Connecticut Constitution, CGS § 31-51q, and related torts under the common law of the State of Connecticut. Plaintiff claims violation of the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq., This action seeks injunctive relief and a declaratory judgment.

II.     **JURISDICTION AND VENUE**

2.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367, 2201, 2202 and 42 U.S.C. § §1983, 1988 the First and Fourteenth Amendments to the United States Constitution, the Connecticut Constitution, and Connecticut General Statutes ("CGS") §52-557.

3.     Venue is proper within this judicial district pursuant to 28 U.S.C. §1391 because all of the Defendants are residents of the State of Connecticut and a substantial part of the events or omissions giving rise to the claims occurred in the State of Connecticut.

4.     The Court has personal jurisdiction over the individual defendants because they are residents of the State of Connecticut and/or subject to general jurisdiction in this state and because they committed tortious acts, from which this cause of action arises, in the State of Connecticut.

III.    **PARTIES**

5.     The Plaintiff, CHRISTOPHER BURNS ("Plaintiff" or "Burns"), at all times mentioned herein, was a resident of the State of Connecticut and a duly appointed permanent Connecticut State Police Trooper First Class, employed by the Connecticut State Police Department a division of the Department of Emergency Services and Public Protection.  ("DESPP").

6.     The Defendant, JAMES C. ROVELLA, ("Rovella"), during all times mentioned in this action, was the duly appointed Commissioner of the DESPP.  He is sued in his individual and official capacity.

7.     The Defendant, DORA B. SCHRIRO, ("Schriro"), during all times mentioned in this action until November 18, 2018, was the duly appointed Commissioner of the DESPP.  She is sued in his individual and official capacity.

8.     The Defendant, GEORGE F. BATTLE, ("Battle"), during all times mentioned in this action, until February 2019, was a duly appointed Colonel and Commander of the Connecticut State Police, a division of the Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

9.     The Defendant, STAVROS J. MELLEKAS ("Mellekas"), during all times mentioned in this action, was a duly appointed Colonel and Commander of the Connecticut State Police, a division within the State of Connecticut Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

10.    The Defendant, MICHAEL B. DARCY ("Darcy"), during all times mentioned in this action, was a duly appointed Major in the Connecticut State Police, a division within the State of Connecticut Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

11.    The Defendant, JAY E. DELGROSSO, ("DelGrosso"), during all times mentioned in this action, was a duly appointed Lieutenant in the Connecticut State Police, a division within the State of Connecticut

3

Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

12.     The Defendant, MATHIEU R. ASSELIN, ("Asselin"), during all times mentioned in this action, was a duly appointed Lieutenant in the Connecticut State Police, a division within the State of Connecticut Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

13.     The Defendant, MICHAEL B. DARCY ("Darcy"), during all times mentioned in this action, was a duly appointed Sergeant in the Connecticut State Police, a division within the State of Connecticut Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

14.     The Defendant, ALAIN J. BISSON ("Bisson") was a duly appointed Sergeant in the Connecticut State Police, a division within the State of Connecticut Department of Emergency Services and Public Protection. He is sued in his individual and official capacity.

15.     The Defendant, DEPARTMENT OF EMERGENCY SERVICES AND PUBLIC PROTECTION, ("DESPP"), during all times mentioned in this action, is an agency of the State of Connecticut.


IV.     **FACTS APPLICABLE TO ALL CAUSES OF ACTION**

16.     The individual Defendants, during all times mentioned in this action, acted under color of law of the Constitution and Statutes of the United States and

4

State of Connecticut, the laws, charter, ordinances, polices, rules, regulations, customs and usages of the State of Connecticut.

17. Defendants Schriro, Battle, Rovella and Mellekas, in their capacity as Commissioner of DESPP and commanders of the CSP, are supervisors and policy makers for the DESPP.

18. At all times mentioned in this action, the Plaintiff has been a sworn CSP trooper since June 2001.

19. From June 2006 plaintiff was assigned as a Detective with the Eastern District Major Crimes Unit ("EDMC").

20. On or about January 11, 2011, plaintiff filed a complaint in the Superior Court, later removed to the United States District Court alleging that defendant DESPP, and others, violated of his First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983 and violation of Connecticut General Statutes Section 31-51q, captioned *Christopher Burns v. State of Connecticut Department of Public Safety, et al.* 3:10-cv-02053-AWT. ("*Burns v. DPS*")

21. In *Burns v. DPS,* plaintiff alleged, inter alia, that DPS (now known as DESPP), retaliated against him after he spoke out against unauthorized DNA collection in violation of his First Amendment right to free speech. See *Burns v. Dep't of Pub. Safety,* 973 F. Supp. 2d 141 (D.Conn 2013) (Ruling on Defendants' Motion for Summary Judgment).

22. The parties resolved *Burns v. DPS*, on or about January 30, 2015, with the final docket entry on April 22, 2015.

23.     From the time the above referenced lawsuit was resolved plaintiff has been subjected to increasing unwarranted scrutiny and adverse employment actions.

24.     From April 2015, to July 30, 2018, Plaintiff worked as a Detective at the CSP Eastern District Major Crimes Unit, Troop C in Tolland, Connecticut.

25.     Plaintiff has a severely disabled child that requires accommodation and special care.

26.     On July 11 2018, plaintiff notified defendants he was seeking Family and Medical Leave pursuant to the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq., to care for his daughter who was undergoing spinal surgery. The leave was certified by Dr. Mark Lee, M.D.

27.     On July 13, 2018, an updated medical certification from Dr. Lee notified defendants that plaintiff's daughter had post-operative complications.

28.     Plaintiff requested both block leave, from July 11, 2018 to August 18, 2018, and intermittent leave thereafter.

29.     On July 12, 2018, after plaintiff requested FMLA leave to care for his child, defendants, through Asselin, as approved by DelGrosso, initiated IA 18-042 charging that Burns "failed to adhere to A & O reporting requirements regarding [four cases], as well as you failed to complete the necessary steps to bring these cases to any conclusion."

30.     The charges in IA 18-042 were deceitful and retaliatory.

31.     IA 18-042 was assigned to CSP IA Sergeant Jack Kulig for investigation.

32.     On July 20, 2018, while on FMLA, plaintiff was ordered to DESPP headquarters, and asked to explain why he was out on FMLA.

33.   On July 30, 2018, while plaintiff was on FMLA leave caring for his sick child, DelGrosso and CSP Sergeant Ruddy arrived, unannounced, at plaintiff's home where he was caring for his sick child, and took plaintiff's badge, weapons and CSP vehicle, and told plaintiff he was suspended. DelGrosso handed plaintiff a suspension letter from Battle. dated July 30, 2018.

34.   Battle's letter stated plaintiff was suspended indefinitely of all police powers and authority, but stated no cause or charge.

35.   On July 30, 2018, without any basis, defendants took plaintiff's badge, weapons, and car, which was replaced from a 2014 Police Interceptor with 40,000 miles with a 2007 Ford Fusion with 150,000 miles. Plaintiff has been denied all overtime or extra duty assignments since this date.

36.   To the present, defendants have not informed plaintiff of what they are investigating.

37.   Defendants have not notified plaintiff what the basis for this suspension other than refereeing to the Connecticut State Police Union contract ("CBA") Article 15, Section Six.

38.   Article 15, Section 6 of the states: "Placement of an employee on a paid leave of absence shall be governed by Regulation 5-240-5a to permit investigation." This section required defendants to charge plaintiff with the appropriate violation.

39.   Article 15, Section One states: "No permanent employee …shall be reprimanded, demoted for disciplinary reason, suspended or dismissed except for just cause…"

40.   To this date, defendants have taken the adverse actions set forth in this complaint without "just cause".

41.   On or about August 2, 2018, Plaintiff's daughter required a second surgery whereupon plaintiff submitted another medical certification from Dr. Lee seeking extension of his FMLA leave to September 24, 2018.

42.   Plaintiff sought additional FMLA leave due to complications with his daughter's surgery.  This leave was certified by Dr. Lee with a return date October 24, 2018.

43.   October 24, 2018, upon plaintiff's return to work on he was transferred, demoted and assigned to the DESPP, Bureau of Identification, Fingerprint unit, in Middletown, Connecticut.

44.   This results in plaintiff having a longer commute to and from his duty station, and increased difficulty caring for his severely disabled child.

45.   Defendants, without cause or notification, have not reinstated plaintiff's police powers, badge and weapon, and he has been assigned to the identification unit taking fingerprints to this date.

46.   On February 4, 2019, Bisson appeared, unannounced, at plaintiff's home and told plaintiff that he was the subject of a criminal investigation that Bisson was investigating. Bisson refused to tell plaintiff what he was investigating.

47.   On February 5, 2019, plaintiff contacted Bisson, who again refused to tell plaintiff what he was investigating or if plaintiff was a suspect in the criminal investigation. Instead Bisson ordered plaintiff to appear at Troop L on February 15, 2019 for a criminal interview.

48.     Thereafter, Plaintiff retained Attorney Salvatore Bonanno, who contacted Bisson on February 1, 2019 and asked him the reason for interviewing Burns on a criminal matter. Attorney Bonanno told Bisson that he would agree to an interview if he was advised what was being investigated. Bisson responded that he would get back to Attorney Bonanno, and later told him that he would not tell him the nature of the investigation purportedly directed at plaintiff.

49.     Burns, through Attorney Bonanno, notified Bisson that he would not appear for the interview, unless ordered.

50.     Thereafter, Bisson has not had any further contact with plaintiff or his attorneys, causing additional stress and exacerbation of plaintiff's condition.

51.     On or about February 11, 2019, Plaintiff requested FMLA leave for himself to March 8, 2019 to "deal with a personal medical condition caused by a hostile work environment as well as intentional infliction of emotional distress…The condition has caused me to feel unsafe at work."

52.     Defendants were on notice that their actions caused plaintiff severe stress, anxiety, unsafe work conditions.

53.     On March 8, 2019 plaintiff filed an "Employer's First Report of Occupational Injury or Illness" with DESPP.  This report stated that he suffered from work caused PTSD, anxiety and panic attacks and that he was working in a hostile work environment.

54.     Plaintiff has been out on FMLA leave to the present.

55.     Schriro and Battle and later Rovella and Mellekas initiated false and dubious investigations, and then prolonged them maliciously against Plaintiff, in retaliation for his protected speech and use of FMLA leave.

56.     Schriro, Battle, Rovella, and Mellekas, all policymakers of the DESPP, ratified and promoted the aforementioned violations.

57.     Plaintiff complained to defendants about the retaliation, which they ignored.

58.     Defendants should have known that emotional distress and physical injury was the likely result of their actions.

59.     As a consequence of the actions of the Defendants, the Plaintiff suffered from tendonitis due to his new assignment, great humiliation, pain, embarrassment, anxiety, stress, emotional mental upset, and loss of sleep, lost revenue, and attorney's fees.

60.     Defendants knew that their conduct was abusive, and conspired to create a hostile work environment in an attempt to force the plaintiff from his position without process, knowing that it would deny him procedural protections.


**V.      COUNT ONE-DEPRIVATION OF RIGHTS: FIRST AMENDMENT RETALIATION**

61.     Plaintiff realleges all paragraphs as set forth fully herein.

62.     The Plaintiff's complaints and statements in *Burns v CSP* were protected by the First Amendment as they would be fairly characterized as constituting speech on a matter of public concern.

63.     Plaintiff's claims in *Burns v. DPS* were found by the court to be a matter of public concern as they alleged that defendants were motivated by a constitutionally impermissible policy promulgated by the DPS.

64.     Schriro, Battle, Rovella, and Mellekas, all policymakers at the DESPP, which was DPS at the time of plaintiff's lawsuit, were motivated by retaliatory animus against plaintiff for his filing claims of Constitutional violations against DESPP.

65.     Defendants, jointly and severally, operated to deny the plaintiff his rights to protected speech pursuant to the First Amendment of the United States Constitution.

66.     For the reasons set forth above, the injuries to the Plaintiff were the direct and proximate cause of the intentional actions of the defendants.

67.     Defendants have wrongfully suspended plaintiff, taken his police powers, transferred and demoted him into a degrading and physically harming position, instituted secret or fictitious investigations, invaded his privacy, and told plaintiff, without any basis, he was under criminal investigation, all in retaliation for his speech on a matter of public concern.

68.     Defendants have subjected plaintiff to extreme emotional distress forcing him to take FMLA leave, depleting plaintiff's sick and vacation days and threaten to stop paying him and providing insurance and other benefits after plaintiff, whose daughter is severely disabled and in need of medical.

69.    Defendants retaliated against plaintiff by corruptly, and without cause, placing him in an inferior degrading position, taking fingerprints, forcing further emotional and mental anguish.

70.    These actions were in retaliation for plaintiff's petition for redress in this court, all in violation of the First Amendment to the United States Constitution.

71.    Defendants, during all times mentioned in this action, acted under color of law of the Constitution and Statutes of the United States and State of Connecticut, the laws, charter, ordinances, policies, rules, regulations, customs and usages of the State of Connecticut.

72.    Defendants, by their conduct violated the Petition rights guaranteed to plaintiff by the First Amendment to the United States Constitution, as secured by the Fourteenth Amendment to the United States Constitution

73.    Defendants' actions violate the plaintiff's rights to petition the court pursuant to the Constitution of the State of Connecticut.

74.    Defendants' actions were in retaliation for Plaintiff's assertion of rights guaranteed under the aforementioned statutes, policies, laws and the Constitutions of the United States and State of Connecticut.


**VI.      COUNT TWO- DEPRIVATION OF RIGHTS -FOURTEENTH AMENDMENT**

75.    Plaintiff realleges all paragraphs as set forth fully herein.

76.    Defendants, by their conduct violated the Procedural Due Process rights guaranteed to the Plaintiff by the Fourteenth Amendment to the United States Constitution.

77. Defendants failed to have adequate polices and procedures in place concerning the investigation and discipline of plaintiff and failed to follow those procedures that were in place.

78. Plaintiff has not been afforded "notice and an opportunity to be heard" regarding the secret or fictitious investigation or charges against him.

79. Defendants knew that their suspension, demotion and transfer, secret investigations, reassignment, hostile work environment and discipline against plaintiff was untenable and conspired to use the investigation and discipline process to harass and intimidate plaintiff in order to retaliate against him, and knowing that it would deny him procedural protections.

80. Defendants had the legal duty to establish, enforce, direct, supervise and establish and control policies, customs, practices, usages, and procedures to be used by State officials.

81. Defendants conspired through commission and omission by these acts against plaintiff in retaliation for his assertion of rights guaranteed under the aforementioned statutes, policies, laws and the Constitutions of the United States and State of Connecticut.

82. Defendants, by their conduct, violated the plaintiff's Equal Protection rights guaranteed to the plaintiff by the Fourteenth Amendment to the United States Constitution.

83. Defendants have orchestrated a joint effort to force plaintiff from his government employment and prevent him from receiving the equal protection of the laws.

84.     The Plaintiff seeks injunctive relief prohibiting defendants from retaliating against him and a declaratory judgment that the Defendants are in violation to the United States Constitution.

## VII.    COUNT THREE -   VIOLATION OF FMLA

85.     Plaintiff realleges all paragraphs as set forth fully herein.

86.     The Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 prohibits adverse employment actions and retaliation for seeking FMLA protected medical leave.

87.     The FMLA states, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. §2615(a)(1).

88.     Plaintiff's use of FMLA, first for his daughter and then for himself, resulted in the aforementioned retaliation against him.

89.     Defendants suspended plaintiff's police powers, demoted him to a clerical position, transferred to a location further away from his home and disabled daughter, threatened him with a secret criminal investigation negatively affecting plaintiff's pay and benefits in retaliation for seeking protection under the FMLA.

90.     Defendants actions have resulted in severe emotional distress, lost income and humiliation.

## VII.    COUNT FOUR-    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.    The acts and conduct of the individual Defendants constitute intentional infliction of emotional distress upon the Plaintiff, for which the Defendants are liable to the Plaintiff at common law.

92.    The Defendants' intended to inflict emotional distress, or knew that or should have known that emotional distress was a likely result of their conduct.

93.    The Defendants' conduct was extreme and outrageous.

94.    The Defendants' conduct caused the Plaintiff severe emotional distress

95.    Plaintiff claims damages.

## VII.    VIOLATION OF CONNECTICUT CONSTITUION.

96.    Plaintiff realleges all paragraphs as set forth fully herein.

97.    Defendants, by their conduct violated the Free Speech, Petition and Procedural Due Process rights guaranteed to the Plaintiff by the Constitution of the State of Connecticut.

98.    Plaintiff claims damages.

## VIII.    COUNT FIVE- LIABILITY UNDER CGS § 31-51q

99.    In the manner set forth above the defendants retaliated against the plaintiff in violation of Connecticut General Statutes § 31-51q.

100.    The plaintiff claims compensatory damages, punitive damages and such injunctive relief as the court may consider fair and equitable, including attorney fees and costs.

**WHEREFORE**, THE PLAINTIFF CLAIMS:

1.  Compensatory money damages from each Defendant;

2.  Punitive damages from each Defendant;

3.  Injunctive relief and a declaratory judgment that the Defendants' acts policies and practices herein described have violated Plaintiff's rights under the First and Fourteenth Amendment to the United States Constitution as guaranteed pursuant to 42 U.S.C. § 1983;

4.  Any and all nominal damages from each Defendant;

5.  Attorney's fees as provided by 42 U.S.C. §§ 1983 and 1988;

6.  Common law attorneys fees;

7.  All costs associated with the bringing of this lawsuit;

8.  Such other relief as in equity may pertain.

16

## **CLAIM FOR A JURY TRIAL**

The Plaintiff requests a trial by jury for all issues in this case.

PLAINTIFF,

CHRIS BURNS

BY:  /S/ *James S. Brewer* ( ct 07019)
James S. Brewer
67 Russ Street
Hartford, CT 06106
860-217-0652
jbreweratty@gmail.com
HIS ATTORNEY